## ASKIN & MARINE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 417.

Circuit Court of Appeals, Second Circuit.
Aug. 29, 1933.

Charles D. Hamel, of Washington, D. C., Alexander Appel, of New York City, and Benj. H. Saunders, of Washington, D. C. (Hamel, Park & Saunders and Edward M. Woolf, all of Washington, D. C., of counsel), for petitioner.

Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Hugh Brewster, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioner, a New York corporation having its principal office in New York City, operated a chain of retail clothing stores. Its merchandise was sold on credit. The purchaser was required to make a payment at the time of sale and to agree to pay the remainder of the purchase price in weekly installments. A card was kept at the principal office for each customer on which a record of sales and payments were made from daily reports from the various stores. These cards, from 70,000 to 75,000 in number, were kept in files designated respectively as active and delinquent. The delinquent file contained the cards of customers who had made no payment for sixty days and had for that reason been trans-

ferred from the active file. It was the regular practice of the petitioner from 1917 through 1920 to charge off as bad debts and deduct from its gross income all accounts in the delinquent file at the end of each year. In addition to this, it charged off from the total of the accounts in the active file a sum approximating the difference between its sales for the year and the amounts actually collected. It is now admitted that there was no ascertainment of the worthlessness of accounts charged off the active file and no attempt made to do that. The effect of this method was to permit the petitioner to keep its books on the accrual basis and account for purposes of taxation on an arbitrary adjustment which put it as close to a cash receipt and disbursement basis as it desired.

On December 27, 1919, the petitioner charged off as bad debts and deducted from its gross income for 1919 in all $621,176.47. Of this $310,083.62 was charged off the active file. At the end of 1920, the petitioner charged off as bad debts and deducted from its gross income for that year $655,800.32. Of this $280,876.48 was from the active file. During 1920 the petitioner collected $5,459.24 from accounts it had charged off in 1917; $13,354.89 from those it had charged off in 1918; and $289,690.22 from accounts charged off in 1919. Of the total of $308,504.35 so collected, $276,728.40 was from accounts charged off the active file. Until the 1920 return the petitioner's practice in this regard was not questioned. An investigation led to a refusal by the commissioner to allow as a deduction for that year (other years are not in issue on this appeal) the amounts charged off the active file in 1920; to exclude from gross income collections in 1920 on accounts previously charged off; and to adjust invested capital accordingly.

The petitioner had included in gross income in previous years the collections it made on accounts charged off, but upon its acquiescence in the position that the charging off of accounts before it ascertained them to be worthless had been erroneous it claimed that collections from such accounts could not be income in the year collected; and further that accounts receivable erroneously charged off at the end of 1919 should be added to invested capital for 1920.

■ The petitioner bears heavily upon the fact that its practice in charging off these accounts was uniform in the years up to and including 1920 and that it "raised no question here and desired only to continue." It appears to believe that such a practice so continued created a right to be taxed only on the same basis in 1920 because the commissioner had made no objection before. Once let it appear that the return for 1920 was not in accordance with the law, and the petitioner admits this when it agrees that it had no right to take the deductions based on charge offs from the active files, and it seems quite inadequate, in attempting to show that this decision of the Board of Tax Appeals was wrong, to point to similar errors in former years. Grant that it may have considered itself entitled to the deductions it took in previous years and was confirmed in that belief as to 1920 by the fact that it had been allowed such deductions before, and there is still no basis for the claim that repeated error in taking deductions for debts charged off as worthless before they were ascertained to be worthless gave the petitioner any right to have its taxes assessed in 1920 on any different basis than the applicable statute required. The 1920 charge off from the active file was on account of debts not ascertained to be worthless and was properly disallowed, and we do not understand that the petitioner now claims the contrary. Instead, it does claim that, as this deduction was improperly taken and like deductions in previous years also improperly taken, the amounts collected in 1920 on accounts previously charged off should not be included in its gross income for that year.

■ Section 213 (a) of the Revenue Act of 1918 (40 Stat. 1065) applies. It provided that gross income "includes gains, profits, and income derived from * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" T. R. 45, Art. 52, promulgated under the 1918 act, provided, as previous regulations on the same subject had provided, that bad debts ascertained to be worthless and charged off which were subsequently recovered were income for the year in which recovered regardless of the date when charged off. The re-enactment of the statute in substantially the same form while regulations like these were in effect is a persuasive indication that Congress approved them. Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457;

778

Shearman v. Commissioner (C. C. A.) 66 F.(2d) 256, and cases there cited. Where a charge off is proper and the deduction accordingly allowed, it is well settled that any later collection on the debt is to be returned as income in the year of its receipt. Putnam Nat. Bank v. Commissioner (C. C. A.) 50 F.(2d) 158, and cases there cited.

We need in this case to concern ourselves with the theory advanced that when debts not ascertained to be worthless have been charged off and a deduction has improperly been claimed and allowed, no part of such deduction when collected can be included in income. It is obvious that if this is so a taxpayer who gets an unlawful deduction in this way not only cuts down his taxable income in the year the deduction is taken, but gets immunity from income taxation on the account receivable which was deducted whenever it, or any part of it, is received. A result so unjust is not to be reached unless plainly required by law. Having represented that it had ascertained these accounts charged off its active file to be worthless and having received the benefit of the deduction it claimed when the commissioner took its representation of the ascertainment of worthlessness at its face value, we think the petitioner is now clearly estopped from denying, to the prejudice of the government, the truth of the representations upon which it has succeeded in former years in obtaining deductions from its gross income. While the commissioner must investigate returns to satisfy himself of their correctness in fact and law, a taxpayer may not benefit at the expense of the government by misrepresenting facts under oath; by succeeding in having the commissioner accept its representations as the truth; and by claiming later that what it represented to be true might have been found false had the commissioner refused to have faith in the sworn return. Commissioner v. Liberty Bank & Trust Co. (C. C. A.) 59 F.(2d) 320.

For the same reason, the taxpayer's contention that accounts erroneously charged off previous to 1920 should be added to invested capital for that year was properly denied. It was likewise estopped on that score. Isbell-Porter Co. v. Commissioner (C. C. A.) 40 F.(2d) 432, upon which the petitioner relies, involved merely the correction of an error where no question of estoppel was raised.

Affirmed.