CHEVY CHASE LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78584. Promulgated March 18, 1936.

*A. E. James, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

OPINION.

LEECH: The petitioner seeks redetermination of a proposed deficiency of $2,655.10 in income tax for the calendar year 1932. The deficiency arises through respondent's inclusion in gross income for 1932 of $15,511.33 received by petitioner in that year as a refund of special assessment taxes collected from it in prior years pursuant to a statute later declared unconstitutional.

We find the facts as formally stipulated. Briefly stated these facts are:

The petitioner in 1925 and 1926 sold property on which, in prior years, it had paid special improvement taxes, in the total amount of $15,511.33, assessed by the District of Columbia on the basis of front footage, under the so-called Borland Amendment.

Under its system of accounting the petitioner did not charge any of these special assessment taxes direct to the capital account of individual lots. Part of its property was not then plotted for subdivision. It maintained a capital reserve on its books to which it charged special improvement assessments paid. Each year as property was sold, in determining the gain or loss upon such sales, an amount of cost contained in the reserve was charged to the cost of such property. The amounts deducted from the reserve and allocated to the cost of the property sold in 1925 and 1926 were $251,080.40 and $86,067.88, respectively. In its income tax returns for these two years petitioner charged and deducted, as a part of the cost of the property sold during each of those years, one half of the amounts set out above, or $125,540.20 for 1925 and $43,033.94 for 1926. That only one half of the amounts allocated from the reserve was deducted in that computation was because of the fact that the original cost figure used, before the adjustment by reason of special assessment taxes paid, was a March 1, 1913, value determined for the property on the basis of its increased value caused by the improvements for which special assessments were made. Consequently, such value included a part of the cost of the special assessment. It was estimated that this amount was 50 percent of that paid assessment.

Subsequently, on audit of petitioner's return for the year 1925, the respondent reduced petitioner's estimate of March 1, 1913, value of property sold, but made no change in the amount added by petitioner to such cost, as special assessments and improvements, except to add thereto the sum of $76. Petitioner asked redetermination of the resulting deficiency by this Board. That proceeding was settled by compromise.

Upon audit of petitioner's return for 1926 the respondent reduced the March 1, 1913, appraised value of property sold in that year from

**152**

the amount used by petitioner in computing the gain on sale of that property, but respondent made no change in the amount added to such value as special assessments and improvements charged to cost from the reserve as heretofore set out.

As in the case of the tax liability for 1925, settlement was effected by compromise during the pendency of a proceeding before this Board contesting that resulting deficiency. In arriving at this settlement the respondent increased his determination of the March 1, 1913, value of property sold by $95,472.38, and increased, by $71,-060.64, the amount added by petitioner to the March 1, 1913, value as assessment and improvement taxes paid. This computation resulted in a showing of overpayment of tax for that year in the amount of $1,444.72, but no refund of this amount was allowable by reason of the bar of the statute of limitations.

In 1932 petitioner received a refund of $15,511.33, paid by it prior to 1925, under assessments made against lots sold in 1925 and 1926. This refund was made because of the decision of the courts holding the Borland Amendment to be unconstitutional.

In determining net income for 1932 respondent included this refund in gross income as an amount received in that year for which petitioner had taken credit in prior years by including that amount in the capital cost of properties in computing the income upon which it paid its tax for such years.

It is admitted by petitioner that of the total of $15,511.33 in special assessments refunded to it in 1932, items aggregating $1,750.80 were specifically claimed by petitioner and allowed by respondent as a part of the cost of property sold from 1927 to 1930 inclusive; that items totaling $11,212.57 were included in the $251,080.40 credited to the special assessment reserve and charged to cost of property sold in 1925 in the manner heretofore described; and that the balance, in the sum of $2,547.96, was included in the aggregate of $86,067.88 credited to the reserve and charged to cost of property sold in 1926, and was included in the amounts finally allowed by respondent in the settlement arrived at for that year.

Petitioner contends that the refund in question does not represent income. We do not agree. If this refund represents, as determined by respondent, a disbursement made in prior years by petitioner for which it then took credit in determining its net income, it is now, in fact, enriched to this extent by the payment received, or has actually realized a gain in this amount.

As we said in *South Dakota Concrete Products Co.*, 26 B. T. A. 1429:

\* \* \* income-tax liability under the Federal revenue acts is to be determined on annual periods on the basis of facts as they existed in each period, and when an adjustment occurs which is inconsistent with what has been done in the past in the determination of tax liability, the adjustment should be reflected in reporting income for the year in which it occurs.

The fact that the original payments here in dispute, the subject of the later refund, were made under an unconstitutional statute, which must be considered void *ab initio*, does not affect the question. Even if made under those circumstances, those payments were allowable deductions in computing net income for the years in which made. *E. L. Bruce Co.*, 19 B. T. A. 777. See also *Charles F. Fawsett*, 30 B. T. A. 908. Respondent has determined here that the amounts represented in the refund were actually allowed to this petitioner in prior years. The cases cited by petitioner, in support of his contention that the contested taxes do not constitute deductions applicable to prior years, are upon facts different from those established here. In *Inland Products Co.*, 10 B. T. A. 235; affd., 31 Fed. (2d) 867; and *Mary W. Leach*, 16 B. T. A. 781; affd., 50 Fed. (2d) 371, refund was received prior to the final determination of the tax liability for the year in which the refunded payment had been made. If the facts are as determined by respondent and the refund to petitioner in 1932, in fact, represents its payments in prior years, for which it received credit in computing net income, then the refund constitutes taxable income to petitioner. As this Board said in *Houbigant, Inc.*, 31 B. T. A. 954:

The facts in this case show that in the income tax returns filed by the petitioner for the years 1924 to 1930, inclusive, the petitioner claimed and was allowed the deduction of the full amounts of the customs duties paid. They were not allowed under the name of customs duties, but in increased cost of goods purchased by the petitioner. Having been deducted in prior year returns, if they are not taken up in the gross income when recovered, the petitioner clearly, over a series of years, escapes tax upon gains and profits equaling the amount of the customs duties recovered. It cannot be presumed that such a result was contemplated by Congress. Furthermore, from any standpoint the petitioner was enriched by the recoveries of the import duties in the fiscal year ended June 30, 1931. The argument that the income received from this source is exempt from tax has no support in the law.

That this is the correct rule is evidenced by many decisions of the courts and this Board. *Burnet* v. *Sanford & Brooks*, 282 U. S. 359; *Excelsior Printing Co.*, 16 B. T. A. 886; *Iberville Wholesale Grocery Co., Ltd.*, 17 B. T. A. 235; *Carr* v. *Commissioner*, 28 Fed. (2d) 551; *Davidson Grocery Co.* v. *Lucas*, 37 Fed. (2d) 806; *Putnam National Bank* v. *Commissioner*, 50 Fed. (2d) 158; *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Cooper* v. *United States*, 9 Fed. (2d) 216.

In our judgment, the cases holding that payments of amounts exacted as taxes, under unconstitutional statutes, can not be deducted by a taxpayer under the provisions of the taxing acts permitting the deduction of taxes paid, have no application to the present situation. Here the benefit of the payments was not sought as taxes paid but as cost of property sold. The payments were, in fact, the cost of improvements to petitioner's property, made by the District of Columbia, and for which it had reimbursed the city.

Upon the present question of whether the record establishes that credit actually has been taken in prior years by this petitioner for the payments constituting the refund it received in 1932, we have the respondent's determination of that fact. The burden is thus placed upon petitioner to either prove the contrary, or, at least, to prove that determination erroneous and, consequently, arbitrary and excessive. *Helvering* v. *Taylor*, 293 U. S. 507. Petitioner contends that the evidence before us requires the application of the rule recognized in the cited case which would place upon respondent the burden of establishing definitely the fact that the special assessment taxes involved here were actually included in computing the gain upon the property sold in prior years. We do not agree. Petitioner admits its inability to show that it did not include these amounts in determining net income for prior years. The record discloses nothing contradicting the respondent's determination that these payments were so included. Error in that determination will certainly not be presumed. *United States* v. *Dandridge*, 25 U. S. 64. This would reverse the ordinary presumption of correctness attaching to respondent's determination. That presumption, therefore, stands undisturbed here.

Moreover, the stipulated facts show that credit for large amounts was taken by petitioner in the prior years as representing assessments paid. It was entitled to credit for all those assessments. The contest of petitioner's tax liabilities for 1925 and 1926 involved the very question of the proper amounts of those credits. The settlements of petitioner's tax liabilities for those years included allowances to it for large amounts as such assessments. The evidence does not indicate that these allowed amounts were insufficient to cover both the true March 1, 1913, value of the real estate and the disputed assessments. Upon that record, we think the presumption is strengthened that petitioner received the benefit of the deductions to which it was entitled. Nor does the fact that petitioner actually overpaid, slightly, its income tax for 1926 change that conclusion.

*Judgment will be entered for the respondent.*