**MANN et al. v. ANDERSON, Collector of Internal Revenue.**

District Court, S. D. New York.
Sept. 10, 1937.

As Amended Sept. 18, 1937.

Lord, Day & Lord, of New York City (Harry J. Rudick, Ernest D. North, and Oscar B. Sachs, all of New York City, of counsel), for plaintiffs.

Lamar Hardy, U. S. Atty., of New York City (William F. Young, Asst. U. S. Atty., of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

This action was brought to recover income taxes paid by the plaintiffs' testatrix (hereinafter called the taxpayer) on March 7, 1932. The tax was paid for the calendar year 1929 as the result of a deficiency assessment by the Commissioner of Internal Revenue. The taxpayer's contention is that the income from which this deficiency tax resulted was taxable for the year 1930 and not 1929. The defendant (hereinafter called the Government) sets up the affirmative defenses of estoppel and recoupment.

There was a stipulation of facts filed by the parties and there seems to be very little dispute as to the facts in the matter.

On December 17, 1929, the taxpayer agreed to sell certain realty property situated in Nassau county, N. Y., known as the Bagatelle property, for the sum of $500,-000. The contract provided that the sum of $50,000 was to be paid at the time of the signing of the contract and the balance was to be paid upon the delivery of the deed. The agreement stipulated that the purchaser was to receive his deed on or before February 17, 1930. The taxpayer assumed all the burdens of upkeep, taxes, and mortgage interest and remained in full possession, continuing to bear all risks of loss prior to the delivery of the deed to the purchaser. The contract also provided that if title was found marketable then either party had the right to specific performance.

The taxpayer received $50,000 at the signing of the contract and delivered the deed on February 17, 1930, at which time the balance of the purchase price was paid and the benefits of ownership passed to the buyer.

On March 15, 1930, the taxpayer filed her income tax return for the year 1929 and in

it claimed a deduction from gross income the sum of $23,477.54 as a loss arising out of the sale of the Bagatelle property.

In 1931 the Bureau of Internal Revenue audited the taxpayer's 1929 return and determined a tentative deficiency of $31,471.81 based on the assumption and determination that, instead of the taxpayer's sustaining a loss as claimed on the sale of the property, she had in fact realized a profit of $244,000. A protest was filed against this tentative deficiency by the taxpayer. The Government later determinated that the Bagatelle property had produced a taxable gain of $75,000, and, as a result of this determination, a deficiency tax for 1929 was assessed against the taxpayer in February, 1932, in the amount of $9,375, with interest thereon from March 15, 1930, in the sum of $1,085.82, making a total of $10,460.82. This last-mentioned sum was paid on March 7, 1932.

On February 27, 1933, the taxpayer made a claim for refund of the aforesaid sum of $10,460.82 on the ground that the capital gain on the sale of the Bagatelle property was realized by the taxpayer in the year 1930 and not in the year 1929. The taxpayer contended that as the delivery of the deed took place on February 17, 1930, the capital gain should have been figured and made taxable that year instead of 1929. The theory of the taxpayer in this cause of action is that the capital gain cannot be figured during the year that an agreement of sale is made but must be figured during the year that the deed is delivered.

On March 15, 1933, sixteen days after the claim for refund was made, the statute of limitations barred any further assessment against the taxpayer for the year 1930. Although the assessment of tax was resisted by the taxpayer for a period of upwards of two years on various grounds, February 27, 1933, was the first time the taxpayer made the claim that it should have been assessed in 1930 instead of 1929. The taxpayer contends that this notice of February 27, 1933, afforded the Commissioner of Internal Revenue a reasonable time to assess any additional tax for 1930, and, as the Commissioner took no steps to make such an assessment, the Government must necessarily lose its right to tax the capital gain on the sale of the Bagatelle property.

The Government makes the contention that this claim for refund did not afford the Commissioner of Internal Revenue sufficient time to make any additional assessment for the tax year 1930. One of the Government's supporting claims to this effect is that the request for refund was made at a time when the office of the Commissioner of Internal Revenue was swamped with the flood of work entailed in the filing of returns for 1932 taxes.

The taxpayer sets forth as applicable to the situation at hand section 275 of the Revenue Act of 1928, 45 Stat. 856 (26 U.S.C.A. § 275 note), which reads as follows: "(a) *General Rule.* The amount of income taxes imposed by this title shall be assessed within in two years after the return was filed, and no proceeding in court without assessment for collection of such taxes shall be begun after the expiration of such period."

The taxpayer makes the contention (a) that any profit arising by reason of the sale of the Bagatelle property was taxable income for the year 1930 and not of 1929; and (b), having erroneously reported the profit from the sale of this property for 1929, she was not estopped from claiming that it was taxable for 1930 in view of the fact that her claim for refund of the 1929 tax was filed in time for the Commissioner of Internal Revenue to assess the tax for 1930; and (c), if it is assumed that the Government has sustained its defense, then the taxpayer at least is entitled to a refund of $562.50, which represents interest on $9,375 for the period from March 15, 1930, to March 15, 1931, together with interest thereon, as, in any event, March 15, 1930, would be the date that the Government would be entitled to the assessment and collection of this tax.

By the actions of the taxpayer, the plaintiffs are estopped from recovering any refund of taxes for 1929, the Government contends. It is also contended that the Government is entitled to recoup the sum of $10,460.82, with interest, as income tax for 1930. It is also claimed that the sale of the Bagatelle property may be considered a completed transaction in 1929 and taxable that year.

The three latter defenses of the Government are set up by it as an answer to the claim for refund by the taxpayer, and a complete bar to any recovery of taxes paid by her.

The taxpayer is not entitled to a refund in this action. The income tax return filed for the year 1929 was prepared by the firm of Price, Waterhouse & Co., accountants,

from figures and data supplied to them by the taxpayer. The return was signed and verified by the taxpayer and there was a clear indication that the transaction was completed in 1929. The taxpayer attempted to deduct a loss on the sale of this real estate.

On March 15, 1931, the taxpayer filed her 1930 return and did not allude to this real estate transaction as resulting in either a profit or a loss for the year 1930. An audit was made on September 19, 1931, by the Bureau of Internal Revenue and it revealed that a profit was made on this transaction rather than a loss sustained. A protest was later prepared by Price, Waterhouse & Co., sworn to by the taxpayer, which treated the sale of the Bagatelle property as a 1929 transaction, and at that time placed in issue only the amount of the March 1, 1913, valuation. The firm of Lord, Day & Lord, the present attorneys for the taxpayer, asked for a hearing. At this hearing the taxpayer was represented by Price, Waterhouse & Co., accountants; and Lord, Day & Lord, attorneys, and only the question of the March 1, 1913, valuation was brought up. The proper taxable year was not presented at that time. The taxpayer's contention as to the valuation on March 1, 1913, was sustained in part, a profit was indicated, and a tax assessed and paid by the taxpayer for the year 1929.

The claim for refund was made on February 27, 1933, for the first time based on the contention that the transaction took place in 1930 and not in 1929. At that time no amended income tax return for 1930 was filed by the taxpayer. On March 15, 1933, the statute of limitations barred any further assessment for 1930. No action was taken by the Commissioner of Internal Revenue to assess or collect the tax for 1930. It is a known fact that when this claim for refund was made on February 27, 1933, the income tax office was at the height of its busiest time.

■ It is uncontradicted that the taxpayer represented the transaction to be a 1929 one and remained silent as to its true status throughout the negotiations with the Commissioner when the facts could have been revealed. Various questions were brought up at these conferences but it is admitted that the first time the taxpayer made a claim that the tax was returned for the wrong year was on February 27, 1933. Undoubtedly, the Commissioner was in duty bound to make his own investigation and could not accept blindly every statement the taxpayer made as a fact. On the other hand, it is the duty of the taxpayer to deal fairly, justly, and truthfully with the Government. Commissioner of Internal Revenue v. Liberty Bank & Trust Co. (C.C. A.) 59 F.(2d) 320.

In the case of Askin & Marine Co. v. Commissioner, 66 F.(2d) 776, 778 (C.C.A. 2), it was said: "While the commissioner must investigate returns to satisfy himself of their correctness in fact and law, a taxpayer may not benefit at the expense of the government by exhibiting facts under oath; by succeeding in having the commissioner accept its representations as the truth; and by claiming later that what it represented to be true might have been false had the commissioner refused to have faith in the sworn return."

The Internal Revenue Commissioner, by its agents throughout all of the transactions, did not have any knowledge of the true facts. Curran, the internal revenue agent who made an investigation of the 1929 income tax return of the taxpayer at the office of Price, Waterhouse & Co., accountants, and who was given all the material available by that firm, was not shown any copy of the contract of sale, nor was there any contract of sale in the file. He made his report on the basis of the material and data shown him. Jacobs, another internal revenue agent, was at a conference at which Mr. Ashbaugh, of Price, Waterhouse & Co., represented the taxpayer, and later Harry J. Rudick, Esq., of Lord, Day & Lord, represented her. Three issues were raised—the profit on the sale of the Bagatelle property, an interest deduction, and a luxury tax deduction. The contract of sale was never produced at the conference and this agent never saw a copy of it.

Mr. McCadden, employed by the firm of Price, Waterhouse & Co., worked on the tax return regarding the Bagatelle property, but he never saw a copy of the contract of sale. There is proof that he and Mr. Ashbaugh wrote a letter on November 12, 1931, to Mrs. Hastings, requesting that she send the accountants a copy of the contract of sale. Mr. Ashbaugh was employed in the tax department of Price, Waterhouse & Co., and supervised the preparation of this tax return which was prepared from the information supplied by the taxpayer. The letter he wrote requesting the contract of sale for the Government

was in relation to some furniture that was in question at the time. The taxable year was not raised at that time. The contract of sale was not produced.

Thus, it appears from the facts in the case that not only did the taxpayer fail to produce the contract but the Government asked for its production, not because the Commissioner thought 1929 was not the proper taxable year but because an extraneous matter arose which required the production of the contract of sale. If, at that time, the contract had been exhibited, the Commissioner would have been in a position to determine 1929 was not the proper taxable year and make an assessment for the year 1930.

The court, therefore, finds of necessity that the Commissioner of Internal Revenue was justified in relying upon the voluntary statement of the taxpayer as to the proper year for the tax in view of all these circumstances. This is especially true when it is considered that, had the agreement been produced when requested by the Commissioner, he would have been in a position to make an assessment for the proper year. There should be no profit built on an inducement by him who sues, nor should the Government be foreclosed from a rightful tax because the taxpayer's return was not accurate. The cases with relation to estoppel seem to clearly indicate that this should be the holding and it is the opinion of this court. In the case of Brant v. Virginia Coal & Iron Co., 93 U. S. 326–336, 337, 23 L.Ed. 927, it is stated: "There are undoubtedly cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting; as where one of two innocent parties must suffer from the negligence of another, he through whose agency the negligence was occasioned will be held to bear the loss."

It is apparent that parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been made to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it. Casey v. Galli, 94 U.S. 673–680, 24 L.Ed. 168.

In the case of Dickerson v. Colgrove, 100 U.S. 578–580, 584, 25 L.Ed. 618, the doctrine of equitable estoppel or estoppel in pais is aptly stated as follows: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked.

The question arises at this point as to whether or not the demand for refund of February 27, 1933, under the circumstances, put the Commissioner on notice. Unquestionably, this notice was sent at a time when the office of the Commissioner of Internal Revenue was flooded with tax returns for the year 1932. Because this tax matter had been pending for a long time and for the reason that the office of the Commissioner of Internal Revenue was swamped with the rush of business, it is possible and plausible that action on the transaction was set aside for the moment and the Commissioner neglected this matter to attend the urgent matters pertinent to the filing of the income tax returns for 1932. Thus, the statute of limitations was permitted to run. Mr. Justice Holmes aptly said in the case of Rock Island, A. & L. R. Co. v. United States, 254 U.S. 141–143, 41 S.Ct. 55, 56, 65 L.Ed. 188: "Men must turn square corners when they deal with the Government." Whether or not the notice was adroitly timed, it is impossible to say. That the taxpayer timed it perfectly is apparent, when it is considered that this matter had been pending for two years, and for the first time the claim was made that the tax was assessed for the wrong year on February 27, 1933.

Under these circumstances, the doctrine of equitable estoppel is applicable here and bars a recovery by the taxpayer.

Under the theory of the court's decision that the tax was payable on March 15,

1931, and since the taxpayer made the payment on March 15, 1930, the taxpayer is entitled to the interest thereon from March 15, 1930, to March 15, 1931, which amounts to $562.50.

It is therefore unnecessary to consider the second defense of the Government, that of recoupment, or to determine the third defense, whether or not 1929 or 1930 is the proper taxable year in view of this decision.