HELVERING, Com'r of Internal Revenue,
v. JANE HOLDING CORPORATION.

MALLINCKRODT et al. v. HELVERING,
Com'r of Internal Revenue.

Nos. 11520, 11522.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1940.

Rehearing Denied March 16, 1940.

934

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and. Sewall Key and Newton K. Fox, Sp. Assts. to Atty. Gen., on the brief), for Guy T. Helvering, Commissioner of Internal Revenue.

Harry W. Kroeger, of St. Louis, Mo. (Daniel N. Kirby, of St. Louis, Mo., on the brief), for Jane Holding Corporation and Edward Mallinckrodt, Jr., et al.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

WOODROUGH, Circuit Judge.

These cases are before the court on separate petitions for review of two decisions of the Board of Tax Appeals rendered in proceedings instituted by two petitions for re-determination of income tax liability as determined by two separate deficiency letters issued by the Commissioner of Internal Revenue. One proceeding was instituted in the Board of Tax Appeals by petition for re-determination filed by Jane Holding Corporation, petitioner, respecting its income tax liability for the year 1933. That case is now before this court as No. 11,520 on petition for review filed by the Commissioner. The other proceeding was instituted in the Board of Tax Appeals by petition for re-determination filed by Edward Mallinckrodt, Jr., and St. Louis Union Trust Company, Trustees under indenture of trust made April 17, 1918, petitioners, respecting their income tax liability for the year 1932. That case is before this court as No. 11,522 on petition for review by said trustees. The cases were consolidated in the Board of Tax Appeals for hearing, briefing and opinion, and the Board made the foregoing findings of fact upon which it based its conclusions and opinion covering both

of the cases. It decided in favor of the taxpayer, Jane Holding Corporation, in case No. 11,520, and in favor of the Commissioner in case No. 11,522. After the separate petitions for review had been filed in this court, the cases were submitted here upon a consolidated record.

### Case No. 11,520.

We consider first the case of the Jane Holding Corporation which was decided by the Board of Tax Appeals in favor of the corporation and against the Commissioner. It involves the question whether the corporation was taxable in respect to the amount of $2,510,222.07 which was carried on the books of the corporation as a debt due the Mallinckrodt trust for interest due on money loaned and which the trust forgave and cancelled as of December, 1933.

On the hearing of the cases before the Board the Commissioner presented alternative contentions upon which he sought to impute tax liability for the year 1933 in respect to the same amount of $2,510,222.07 both to the Jane Holding Corporation and to the Mallinckrodt trust, claiming that such was the tax effect of the transactions between the trust and the corporation set out in the findings of the Board. Deficiency in the amount had been duly determined against both taxpayers. But in this court the Commissioner has not pressed further the claim against the trust. He now stands upon the contention that the result of said transactions between the corporation and the trust was that the Jane Holding Corporation realized income in the year 1933 in the amount of $2,510,222.07 in respect to which it became taxable for that year. He asks for reversal of the decision of the Board refusing to allow the deficiency determined by him in that amount for that year against the corporation.

We discuss first his point presented under appropriate assignments that the Board erred in finding that, "The trust, the sole stockholder of the corporation, * .* * gratuitously canceled and relinquished its indebtedness against the corporation".

He contends that the cancellation was not gratuitous and 'that good and valuable considerations therefor were shown by the undisputed evidence to have moved between the parties to the transactions.

The relevancy of the question whether or not the cancellation was gratuitous appears by reference to Treasury Regulation 77 promulgated under the Revenue Act of 1932, Article 64, which was in force at the time of the transaction. It concludes with the sentence reading as follows: "If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation". Since contributions to capital are not taxable as income, the corporation's position here is that the regulation should be given the force of law, Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536, and that the forgiveness and cancellation of the corporation's $2,510,222.07 indebtedness to the trust must be deemed to have effected only a non-taxable contribution to the corporation's capital.

But we think the facts found by the Board conclusively establish that the cancellation was .not gratuitous either on the part of the corporation or on the part of the trust, and that there was good and valuable consideration therefor. Reference to the Mallinckrodt trust indenture of April, 1918, discloses that it was a fundamental of the plan by which Mr. Mallinckrodt senior accomplished the investment of his large capital in income producing property, that amounts equal to the investment in the property and the interests thereon should be kept impounded in trust in the form of debts due from the corporation and in funds received from the corporation and at all times kept available in the hands of the trustees to sustain and protect the investment. He imposed the duty on the trust to execute that part of the plan, and the trust became burdened with the legal obligation (enforceable by the Jane corporation) to keep the debt owing to the trust from the corporation and the amounts the trust received from the corporation impounded in trust for the whole term stipulated in the trust indenture.

There is a rare sense in which it may be said that a trust neither gains nor loses by its transactions; only its beneficiaries profit from the advantages it gains or suffer from the detriments. But as an entity for income taxation its transactions must be viewed like those of other taxpayers. Its transactions from which pecuniary advantages accrue to it constitute consideration·moving to it, and its transactions by which it surrenders its property or the debts owing to it constitute consideration moving from it. Otherwise there would be no yardstick to measure the tax-

able income of a trust. In this case, of course, valuable consideration moved from the trust to the Jane Holding Corporation in the transactions of 1933 when the trust surrendered to the corporation $2,890,349.-85 of debt then owing by the corporation to the trust. That much is not debatable, but we think it is equally clear that the corporation also relinquished to the trust a very substantial pecuniary interest which prevented the cancellation transactions from being gratuitous.

Before the transactions the trust was under the legal obligation, undertaken for the benefit of the corporation and enforceable by it, to keep an estate amounting in moneys and securities to several million dollars impounded in trust indefinitely, short of the statute against perpetuities, or until the trust collected debts owing to it from the corporation which at the time of the forgiveness transaction amounted to $2,890,-349.85. After the transaction the trust was relieved entirely from those legal obligations towards the corporation and it had its assets, amounting to fully twice the amount of the corporate debt which it forgave, free to distribute to the other and ultimate objects of the trustor's bounty. The conclusion that the trust's cancellation of the corporation's debt to it involved relinquishment of a right on the corporation's part and pecuniary advantage to the trust, and that it was upon consideration and not gratuitous, is inescapable as long as the corporation and the trust are looked at as entities whose gains reduced by allowable deductions are subject to be taxed.

■ If Mr. Mallinckrodt senior had retained the Jane corporation stock himself, and if he had obligated himself to keep the whole of the corporation's debt to him and all of its payments to him thereon impounded in his own hands indefinitely, or until all the corporation's debts were paid off (except as here limited), then the advantage to him of getting relief from such burden of obligation and the detriment to the corporation in surrendering its protection would be equally obvious. To get that relief would manifestly constitute consideration moving to him. But he has put the trust in his place within the limits of the indenture and the trust is in no better position than he would have been to deny that advantage and consideration moved to it in the cancellation transaction.

It was the view of the Board of Tax Appeals that there was "no other consideration [for the debt cancellation] excepting the demand of Edward Mallinckrodt, Jr., for the income of the trust estate and the effort to make such income available to him entered into the motive or reason for making the cancellation". But we think this method of approach fails to keep all the facts in view. It disregards the termination of the corporation's important interest in the entire trust fund. It led the Board to its erroneous conclusion that the debt cancellation was gratuitous. Of course the theory of this trust and of all such trusts is that every advantage the trust gains throughout its existence is for its beneficiaries, and the same is true in respect to the advantages this trust obtained in being relieved of its obligation to the corporation to keep the trust funds bound up indefinitely (except as limited). That advantage also was intended to inure and did inure to advantage in the beneficiary. Undoubtedly the pressure of the beneficiary stirred the trust into action to obtain for itself release from its obligation to the corporation to keep its funds bound up indefinitely (except as limited). But no true answer to the trust's income tax inquiry can be arrived at by confusing the interests of the trust entity with those of its beneficiaries. The transactions between the trust and the corporation carry the same implications, regardless of who suggested or wanted them. The trust would hardly have acted to cancel the debt owing to it from the corporation against the opposition of the beneficiaries. But its action was its own and the nature of its action, whether it was or was not gratuitous, is in no wise dependent on the desires of the beneficiaries or on the fact that a beneficiary of the trust suggested, urged or benefited by it. As we are persuaded that the cancellation transaction was not gratuitous within the wording of the Regulation 77, Article 64, we think that the case falls outside of the concluding sentence of the regulation.

But turning from consideration of the word gratuitous in the concluding sentence of Article 64 of Regulation 77, we revert to the Article as a whole. It reads: "Article 64. Forgiveness of indebtedness. The cancellation and forgiveness of indebtedness may amount to a payment of income, to a gift, or to a capital transaction, dependent upon the circumstances. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income to that amount is realized by the debtor as compensation for his services. If, however, a creditor merely desires to

benefit a debtor and without any consideration therefor cancels the debt, the amount of the debt is a gift from the creditor to the debtor and need not be included in the latter's gross income. If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation."

We think it plain that the Article purports and intends to deal only with principal indebtedness and that the declaration and the three illustrations of the Article indicate that the subject of interest accruing upon indebtedness as a separate matter distinct from indebtedness, was "not in the draftsman's mind" (Member Sternhagen), or within the scope or intendment of the Article. The references in the Article are to "indebtedness" and to "debt" and the effect upon income taxation produced by the accruing of interest upon such debt or indebtedness was subject matter foreign to its purpose. The Commissioner's regulations are his interpretations of the meaning of the income tax law and where they are not contrary to the law and uniformity requires it, they may be given the force of law in the courts. But we may not unnecessarily expand the intendment of the Regulation to work an exemption from tax of income which Congress has made subject to tax.[1] If the interest annually accrued upon the indebtedness of the corporation to the trust was income taxable against the corporation in 1933, such income was not exempted by the Article.

It appears from the Board's findings that year by year while the Jane Corporation was collecting the large income produced by the properties it owned, it made its return for income tax on the accrual basis, and year after year entered the interest on its debt to the trust as an accrued obligation, and although it did not satisfy the obligation by payment, it obtained deduction from gross income on account of the obligation so accrued. Such accrued interest obligation amounted to $2,510,222.07 in 1933 and it was then cancelled and forgiven by the trust upon the consideration of the extinguishment of the trust's obligation towards the corporation above discussed. So the situation presented is simply this: The corporation had properties from which it derived income, but it owed for borrowed money and each year became obligated to pay interest therefor. It did not pay the interest, but it entered the same on its books as a debt incurred in the conduct of its business and one which was accrued and to be paid by the corporation to the trust and which was, therefore, deductible under its accounting system from its gross income in determining its income subject to tax. In 1933 the interest debt so accrued having been forgiven, the corporation's return for that year for the first time disclosed that the interest obligations which theretofore had been shown as accrued items to be paid by the corporation, could no longer be so represented. The controlling decisions establish that when such items of income are so entered as accrued debt by a solvent taxpayer returning on the accrual basis, the items are deemed in law to be restored to income if and when the debt is subsequently forgiven. The statute compels taxation in respect to the true income and the liability for tax is controlled by the statute rather than by the permissible system of bookkeeping entries that indicate debts accrued which it turns out never did in fact require payment.

The principle is applied by the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. There the taxpayer received payments in 1913 to 1916 under a dredging contract with the United States and in its returns deducted expenditures made during the year in performing the contract. The expenditures exceeded the payments received. Subsequently the work was abandoned and in 1920 as the result of a suit the taxpayer received as damages an amount equal to the excess expenditures. In holding that the amount was taxable income for the year 1920, the court said, 282 U.S. loc. cit. 363, 364, 51 S.Ct. loc. cit. 151, 75 L.Ed. 383:

"That the recovery made by respondent in 1920 was gross income for that year within the meaning of these sections cannot, we think, be doubted. The money received was derived from a contract entered into in the course of respondent's business operations for profit. While it equalled, and in a loose sense was a return of, expenditures made in performing the contract, still, as the Board of Tax Appeals found, the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning

---

[1] We think the amendment to the Regulation embodied in Article 22(a) 14 of Regulations 101, 1938, was an addition relating to the matter of interest which was not mentioned in Article 64.

profits. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income. See Doyle v. Mitchell Brothers Co., supra, page 185 of 247 U.S., 38 S.Ct. 467 [62 L.Ed. 1054].

"That such receipts from the conduct of a business enterprise are to be included in the taxpayer's return as a part of gross income, regardless of whether the particular transaction results in net profit, sufficiently appears from the quoted words of Section 213 (a) and from the character of the deductions allowed. Only by including these items of gross income in the 1920 return would it have been possible to ascertain respondent's net income for the period covered by the return, which is what the statute taxes. The excess of gross income over deductions did not any the less constitute net income for the taxable period because respondent, in an earlier period, suffered net losses in the conduct of its business which were in some measure attributable to expenditures made to produce the net income of the later period."

Applying the same principle to the facts in this case, we think it clear that upon the forgiveness and cancellation by the trust in 1933 of the item of the corporation's interest debt of $2,510,222.07 the corporation must be deemed to have had taxable income in that amount at that time.

The same principle was applied in United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131. There bonds of the company were purchased and retired at a price less than that for which they had been issued. In taxing the difference as gain or income, the Court said at page 3 of 284 U. S., at page 4 of 52 S.Ct., 76 L.Ed. 131: "Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,-521.30 assets previously offset by the obligation of bonds now extinct. We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 364, 51 S.Ct. 150, 75 L.Ed. 383."

In Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, the difference between the face value of certain bonds assumed by the taxpayer in 1914 and the amount at which they were purchased in subsequent years was held to be realized income and taxable as such. In the course of its opinion, the Court said, at page 431 of 291 U.S., at page 461 of 54 S.Ct., 78 L. Ed. 891: "Doubtless, respondent's books indicated a decrease of liabilities with corresponding increase of net assets."

In Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297, the Court held that when an insurance company deducted excessive reserves in prior years which were released to the general uses of the company in a subsequent year, the amount so released was taxable income in a later year, although actually received before that time. The Court said, 251 U.S. loc. cit. 352, 40 S.Ct. loc. cit. 159, 64 L.Ed. 297: "If, in this case, it were due to an overestimate of reserves for 1912 with a resulting excessive deduction for that year from gross income, and if such excess was released to the general uses of the company and increased its free assets in 1913, to that extent it should very properly be treated as income in the year in which it became so available, for the reason that in that year, for the first time, it became free income, under the system for determining net income provided by the statute, and the fact that it came into the possession of the company in an earlier year in which it could be used only in a special manner, which permitted it to become non-taxable would not prevent its being considered as received in 1913 for the purposes of taxation, within the meaning of the act."

A release or cancellation of indebtedness results in taxable income.

In Walker v. Commissioner, 5 Cir., 88 F. 2d 170, certiorari denied, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535, a partner's indebtedness on a partnership note was forgiven by creditors and the amount of his share of the forgiven debt was held to be taxable income to the partner in the year of forgiveness. The Court said, 88 F.2d loc. cit. 171: "If respondent is right in this position, all of petitioner's arguments, based as they are on the assumption that the forgiveness took place in 1927 fall. We think he is right, and that when in 1930 the partnership being completely solvent, the forgiveness was accorded by crediting on the balance remaining due the interest paid in earlier years, a gain as simply and as certainly resulted as if the interest payments had been refunded in cash. Cf. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Commissioner v. Liberty Bank &

Trust Co. [6 Cir.], 59 F.(2d) 320; Askin & Marine Co. v. Commissioner [2 Cir.], 66 F.(2d) 776. * * * A taxable gain to *that extent resulted in that year.* United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131. Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891."

In B. F. Avery & Sons, Inc. v. Commissioner, 26 B.T.A. 1393, petition for review dismissed, 6 Cir., 67 F.2d 985, notes given by a solvent debtor were cancelled and were held to result in income in the year of cancellation. Following the cases of Burnet v. Sanford & Brooks Co., supra, and United States v. Kirby Lumber Co., supra, the Board said 26 B.T.A. loc. cit. 1400: "In the present case there was no shrinkage of assets. The whole transaction was of a business nature, entered into for profit. As a result of its dealings resulting in cancellation, not only was there an improvement in the balance sheet and a bookkeeping profit, but also $300,000 of assets, previously offset by the obligation of the notes now extinct, were made available to the petitioner. Why was this not an accession to income in plain popular terms, whether a forgiveness of indebtedness or a revision of the original contract? While in a sense it was a return of expenditures made in purchasing its machinery and producing and selling its merchandise, still these expenditures were made in conducting its business for the purpose of making profits. The use of fixed accounting periods requires that the amount by which expenses, once deducted because paid or accrued, are reduced by later adjustments must be taken into income in the year of the adjustment. Only in this way can the amount of the taxpayer's reported income be *made to agree with its actual income.* We, therefore, hold that the amount in question was income to the petitioner for the year 1927. * * *"

Debts deducted as bad in prior years are taxable income in the year of repayment.

In Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, the taxpayer had charged off in prior years certain debts as worthless. In the taxable years the debts were repaid and were held to be taxable income in the years of repayment. The court said, 59 F.2d loc. cit. 325: "Even if the taxpayer is not estopped from asserting that there was no ascertainment of worthlessness for the former years, we are of opinion that the amounts received in payment of the debts were chargeable to gross income for the years in which they were received. On this point the case is controlled, it seems to us, by the principles announced in Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S. Ct. 150, 75 L.Ed. 383, where a taxpayer sustained losses on a contract which were deducted from income for the year in which they were sustained. * * *"

Wages earned by employees and deducted from income by a corporation, though not collected by the employee, when subsequently charged back to profit and loss, are taxable as income to the corporation in the year so charged. Chicago, R. I. & P. Ry. Co. v. Commissioner, 7 Cir., 47 F.2d 990, certiorari denied, 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527; Charleston & W. C. Ry. Co. v. Burnet, 60 App.D.C. 192, 50 F.2d 342.

In Great Northern Ry. Co. v. Lynch, D.C., 292 F. 903, the court held that income was released in the year the company's obligation was outlawed by the statute of limitations although it did not appear that the amount had been deducted in previous years.

In Askin & Marine Co. v. Commissioner, 2 Cir., 66 F.2d 776, the taxpayer's subsequent collection of a debt charged off in a prior year was held to be income in the year of receipt and where the taxpayer represented that certain accounts improperly charged off were worthless and had received the benefit of a deduction therefor, he was held estopped to assert on collection that the amounts were not income because the original representation of worthlessness was untrue.

Comparable situations resulting in taxable income are also found in Houbigant, Inc. v. Commissioner, 31 B.T.A. 954, affirmed, 2 Cir., 80 F.2d 1012, where during the taxable year a refund of customs duties was made which had previously been deducted in prior years; Chevy Chase Land Company v. Commissioner, 34 B.T.A. 150, where the taxpayer paid special improvements taxes which were refunded in 1932 and were held to be taxable income in that year; South Dakota Concrete Products Company v. Commissioner, 26 B.T.A. 1429; Carlisle Packing Co. v. Commissioner, 29 B.T.A. 514; Sullivan v. Commissioner, 16 B.T.A. 1347; Stevenson Consolidated Oil Company v. Commissioner, 23 B.T.A. 610; Denny v. Commissioner, 33 B.T.A. 738.

The above cases recognize the principle that an obligation, once deducted but not paid, represents income when, because of subsequent circumstances, it is cancelled or it may be determined with reasonable cer-

tainty that it will never be enforced. None of the cases attach any importance to the means by which the cancellation is effected. That is immaterial, the controlling factors being the previous deductions offsetting income otherwise taxable and the subsequent release of the indebtedness before payment.

The Trust filed all of its returns for prior years on the cash basis and never reported as taxable income the interest accrued and deducted by the Corporation. The Trust, through the trustees, has, at all times since its creation, been in a position to determine and dictate the policies of the Corporation. It has chosen to earmark the payments which it received from the Corporation as payments on account of principal and at the same time, throughout the entire period, these payments have been in effect deducted as interest accrued in the Corporation's returns. To now permit this accrued liability, after the forgiveness thereof, to be called surplus and addition to capital without taxing the income actually received by the Corporation would result in an unjustifiable avoidance of tax.

The Board of Tax Appeals to sustain its conclusion against the tax in this case relied upon the decision of the Court of Appeals of the Second Circuit, Commissioner v. Auto Strop Razor Company, 74 F. 2d 226, 227. In that case the court sustained a finding made by the Board of Tax Appeals that a debt owing by the taxpayer corporation to its sole stockholder had been gratuitously forgiven. The court held that the Regulation (identical with 77, Article 64, supra), should be applied and that in accordance with the regulation the taxpayer did not receive taxable income. It also clearly appeared in the case that in fact the purpose of the forgiveness of the taxpayer's debt was to improve its capital structure and that a contribution to capital was intended. To the extent that the decision was rested on the regulation, and the established intent to improve the capital structure, the case is to be distinguished from the present case, because in this case the cancellation of the debt was not gratuitous and it is evident here that improvement of capital structure was not the moving consideration for the cancellation. The opinion of the court in the Second Circuit does contain the statement, however, that in the case before it "when the indebtedness [of the taxpayer] was canceled whether or not it was a contribution to the capital of the debtor depends upon considerations entirely foreign to the question of the payment of income taxes in some previous year". In a prior decision of the same court, Commissioner v. Rail Joint Co., 2 Cir., 61 F.2d 751, the court said: "If he were to report on an accrual basis and were allowed to deduct from gross income for 1930 the $1,000 liability incurred in that year, then it might be said that the settlement of the liability in 1931 for a less sum had released the difference to general uses of the taxpayer and the sum so released should appear as income then received in order that the returns for both years might truly reflect the effect of the whole transaction upon the net income. Upon this principle rest such decisions as Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297, and Charleston & W. C. Ry. Co. v. Burnet, 60 App.D.C. 192, 50 F.2d 342. See, also, Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; 40 Yale L.J. 960, 963."

It does not clearly appear that the decision of the Second Circuit in the Auto Strop Razor case was intended to modify or recede from that court's position announced in the Rail Joint case. The facts in the present case are essentially different from those passed on in the Auto Strop Company case and the quoted comment made by the court in that case can not be regarded as determinative of the issues in this case. If the court interpreted the regulation to exempt items of interest accrued and deducted from income as included in the third illustration of the Article (64), our conclusion is to the contrary.

Turning to the contentions on behalf of the taxpayer, none of the cases cited appears to refute the tax liability here. The cases in which debts were forgiven to an insolvent taxpayer resulting merely in reduction of liability and not in the release of freed assets are not in point. The Jane Holding Corporation was at all times entirely solvent. In United States v. Oregon-Washington R. & Nav. Co., 2 Cir., 251 F. 211, it appeared that the principal amounts of certain loans paid to the taxpayer were involved. They had not come to the taxpayer as income and there had been no deduction from income on account of them. In such a case the moneys released did represent capital and not income, whereas in this case each of the items making up the total $2,-510,222.07 was deducted from income as a current interest obligation accrued and deductible from income. None of the cases detracts from the force and applicability of Burnet v. Sanford & Brooks, supra.

The main burden of the taxpayer's argument is that the transactions between the trust and the corporation did not evidence any shifting of economic benefit such as is necessarily implied in taxable income. It is said that the cases relied on by the Commissioner, where the taxpayer received something by way of actual gain from an outside source as in the case of Sanford & Brooks, are not relevant because here the trust was the sole stockholder of the corporation and was in a sense the owner of the corporation and so the cancellation of the debt of the corporation to the trust resulted in no gain in the nature of income. However the argument may be put—and counsel puts it forcefully in several forms—it fails to persuade because the law regards the stockholders of the corporation and the corporation itself as separate and distinct entities, Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397, and the interests of the separate entities can not be lumped together and made comparable to a single interest, as assumed in the argument. It is true that instances arise where the court must make exception and disregard corporate entity in order to prevent the use of the corporate form to defraud, or to prevent the sham instead of the real from controlling decision. But nothing brings this controversy between the government and the corporation within that exception. On the contrary, advantages in being relieved from taxation have inured to these two entities for many years on the legal basis of their separation as distinct entities and in order to carry out the intent of the income tax law in respect to them it is essential to adhere strictly to the law which treats the corporation and stockholder entities as distinct and separate. Having complete control of the corporation as its sole stockholder, the trust has deliberately directed the corporation income to be accrued on the books of the corporation as a debt to the trust, at the same time treating the payments of the corporation to the trust as capital returned to the trust, and so both entities, each of them legally taxpayers, have been relieved from tax, notwithstanding the invested capital has been productive of large income. When this process of securing immunity from tax was brought to an end and the trust restored the income to the corporation by cancellation of the interest accruals, the long established separation and distinction between the stockholding and the corporation entities must be adhered to to uphold the income tax law. The trust and the taxpayer corporation are separate and the taxpayer cannot take advantage because its income was restored to it by its sole stockholder rather than by a stranger.

It is argued that the $2,510,222.07 for which deficiency was determined by the Commissioner, was not real and actual income to the corporation, such as may be taxed, and that to call it income substitutes a fiction or theory for reality. It is pointed out that what was done in the tax year of 1933 was to cancel a debt and the mere act of cancellation of itself put no money in the corporate pocket. We are reminded that the burden of tax is real and should not—and indeed cannot—be borne without a real income to discharge it. Than which nothing can be clearer.

But there is nothing fictitious or unreal about the Mallinckrodt fortune or its investment in the Arcade Building property. The capital and energies of the tenants of the property have produced real and actual income to the property's corporate owner. It is only the picture presented by the corporation's bookkeeping system that is unreal. That picturing of no income, though not unlawful, turns out to be unreal. Brought to an end by the forgiveness and cancellation of the interest debt in 1933, the real income was then made apparent in the return for that year to the tax collector. He was not called upon to resort to any fiction or theory to realize it. The books showed the moneys were income from the company's properties, and the reasons why the income tax had not been previously demandable appeared in the permissible system of keeping the books. They always reflected the income by way of items of debt for interest expected to be paid over to the trust. After the cancellation that expectation and that reason for not taxing the income ceased to exist, but the income itself did not. It would be a fiction to withdraw the income from tax by changing it to a capital increase and to do so would nullify as to this taxpayer the law which subjects it to tax on the income from its property. Having actually received the income it should pay the tax, notwithstanding its permissible bookkeeping system. The bookkeeping is the factor which turns out to be unreal.

In Higgins v. Smith, 60 S.Ct. 355, 357, 84 L.Ed. ——, January 8, 1940, the Supreme Court said: "There is no illusion about the payment of a tax exaction. Each tax, according to a legislative plan, raises funds to carry on government. The purpose here is

to tax earnings and profits less expenses and losses. If one or the other factor in any calculation is unreal, it distorts the liability of the particular taxpayer to the detriment or advantage of the entire taxpaying group."

So in this case, when the factor of indebtedness accrued on the corporation books for interest each year was shown in the corporation's return for 1933 to be unreal because of the forgiveness of the debt, the Collector was required to recognize the actuality and assess the tax. As the Supreme Court said further along in the opinion just quoted from: "The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation."

The decision of the Board in No. 11,520 is reversed with direction to sustain the deficiency.

### Case No. 11,522.

█ In this case the trustees of the Mallinckrodt trust are the petitioners for review of the decision of the Board holding the trust liable to income tax for the year 1932 in respect to an item of $177,249.36 which was entered on the books of the Jane Holding Corporation in the year 1932 as the debt of the corporation to the trust for interest coming to the trust on money loaned. The amount was not actually paid over to the trust and was forgiven and cancelled in 1933, being a part of the $2,510,222.07 which the trust forgave to the corporation in that year. The Board reached its conclusion that the $177,249.36 item was income to the trust following and in consequence of its previously expressed conclusion that the $2,510,222.07 item was not income in 1933, either to the corporation or to the trust. It reasoned that although the trust had not actually taken the amount of $177,249.36 out of the coffers of the corporation, it had become fully entitled to do so and had refrained of its own choice and so could be deemed to have received it within the tax statute. But the Board's report (opinion 38 B.T.A. 972)[2] discloses that the Commissioner "freely conceded at the hearing and on brief that if the Board should hold that the $2,510,222.07 in question was income either to the trust or to the corporation in 1933, then the $177,249.36 which the corporation accrued on its books in 1932 as interest due the trust and credited to the account of the trust and deducted from its own income tax return in 1932, was not income to the trust in 1932". As we have come to the conclusion contrary to that of the Board that the entire $2,510,222.07 was income to the corporation in 1933, our decision necessitates reversing that rendered by the Board in case No. 11,522 imposing liability upon the trust in respect to the $177,249.36 item. The actual and real income subject to income tax was the income produced by the Arcade Building property in which part of the Mallinckrodt fortune was invested, and the position taken by the Commissioner that the government does not seek to collect double tax in respect to that income from two taxpayers is proper. It accords with the principle of Higgins v. Smith, supra, and "best serves the purpose of the tax statute". There is here no question of any penalty or punitive measures in respect of either of the taxpayers. As we conclude that the $177,249.36 was restored to income of the corporation and was taxable as such, the mere book entries from which it might under other circumstances have been deemed income to the trust, should not prevail over the actual fact that the corporation received the income and should pay the tax in respect to it. Taxation remains practical.

The decision in case No. 11,522 is reversed with direction to disallow deficiency.

---

[2] See 26 U.S.C.A. § 617(b).