DELOSS E. DAGGITT AND DUANA C. DAGGITT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH REID AND MAE REID, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38570, 38571. Filed October 13, 1954.

*William H. Quealy, Esq.*, for the petitioners.
*Robert R. Veach, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner of Internal Revenue determined deficiencies in income tax for 1948 in the amount of $17,193.40 against Deloss E. and Duana C. Daggitt, and in the amount of $910.92 against Joseph and Mae Reid. The petitioners in each case are husband and wife, residing in Michigan, and the joint returns in question for 1948 were filed with the then collector of internal revenue at Detroit, Michigan. Substantially all of the facts have been established by admissions in the pleadings and by a stipulation of facts with accompanying joint exhibits. All such facts are incorporated herein by reference as our findings. The principal question presented is whether petitioners Deloss E. Daggitt and Joseph Reid (referred to hereinafter as Daggitt and Reid) are chargeable with taxable income upon the receipt of certain stock in Producers Transport, Inc., on February 11, 1948. If this question is answered in the affirmative, a second question is presented as to the fair market value of that stock.

Producers Transport, Inc., incorporated in 1942, is a carrier of gasoline and other petroleum products by tank truck. Only one class of

stock, having a par value of $10 per share, has been outstanding during the entire period involved. Daggitt has been the principal stockholder since the date of incorporation. Of the original stock of 100 shares, 98 shares were issued to Daggitt; the 2 remaining shares were apparently merely qualifying shares and were issued to others. At all times material, Daggitt has been president of the corporation. Reid was the active terminal manager.

As of December 31, 1945, the corporation owed Daggitt $24,219.68. In order to reduce this indebtedness, $23,219.68 was "transferred to capital," and by an amendment to the articles of incorporation filed May 27, 1946, the authorized capital stock was increased to 2,500 shares. However, no additional stock was issued at that time.

On or before August 15, 1946, Daggitt decided that Reid should be given an opportunity to acquire a proprietary interest in the business. Reid paid in $2,500 to be applied toward the purchase of stock. As of February 11, 1947, there were 2,400 shares of stock authorized and unissued. This stock was thereupon issued on that day as follows: 2,173 shares to Daggitt for the $23,219.68 which had theretofore been transferred to capital, as noted above; and 227 shares to Reid for $7,491, $2,500 of which he had already paid, the balance being represented by an interest-bearing note secured by a pledge of the stock, with the understanding that such balance would be paid out of earnings.

During 1947, Reid had received a salary from the corporation, but no salary was paid to Daggitt. The corporate net income for that year from operations was $34,071.39 (before deducting salary voted for Daggitt and additional compensation for Reid, as hereinafter described); in addition, it had other income in the amount of $19,226.56. At a meeting of the board of directors on December 15, 1947, it was resolved that Daggitt be paid a salary of $9,000 for 1947, but since the corporation's cash position was such that it could not make payment to Daggitt in cash, it was agreed that Daggitt would accept additional stock (to be authorized and issued subsequently) in lieu of payment of the amount due. Meanwhile, Reid had acquired an interest in the corporation, as already noted, and it was recognized that it would be improper to issue additional stock to Daggitt without issuing a proportionate amount to Reid. Accordingly, in order to maintain their approximate proportionate interest, there was accrued additional compensation of $1,000 for Reid with the understanding that he would likewise accept stock in payment. As of December 31, 1947, there was accrued as wages payable on the corporate books a liability for salaries in the amount of $9,000 to Daggitt and $1,000 to Reid, or a total of $10,000 which the corporation claimed as a deduction on its returns for 1947.

The articles of incorporation were amended on January 28, 1948, so as to increase the authorized capital stock to 5,000 shares. As of February 28, 1948, 1,000 shares of additional stock were issued as follows: 900 shares to Daggitt in payment of his $9,000 salary for 1947, and 100 shares to Reid in payment of his $1,000 additional compensation for 1947.[1] Daggitt reported the $9,000 accrued as salary as of December 31, 1947, in the joint return which he and his wife filed for 1947, and Reid reported the $1,000 accrued as salary as of December 31, 1947, in the joint return which he and his wife filed for 1948.

The Commissioner determined that Daggitt and Reid each received taxable income in 1948 upon receipt of 900 and 100 shares of stock, respectively, measured by the fair market value of the stock, which he fixed at $58.75 a share.[2]

The petitioners challenge the Commissioner's determination that the receipt of the stock in 1948 represented taxable income, and they contest his further determination that the stock had a fair market value of $58.75 a share. In view of our conclusion, hereinafter set forth, that the receipt of the stock did not constitute taxable income, it becomes unnecessary to consider the valuation issue.

Petitioners rely primarily upon *Eisner* v. *Macomber*, 252 U. S. 189, which involved a stock dividend of common upon common. While it is true that the scope of *Eisner* v. *Macomber* has been limited by later decisions of the Supreme Court and that its original theoretical bases have been undermined, see *Helvering* v. *Griffiths*, 318 U. S. 371, 373, 375, 394, and *John A. Messer, Sr.*, 20 T. C. 264, 267, it nevertheless continues to govern cases involving stock dividends of common upon common, as well as other cases in which the declaration and payment of the dividend is thought not to disturb the fractional interests of the stockholders in the enterprise. Cf. *Helvering* v. *Griffiths, supra; Helvering* v. *Sprouse* and *Strassburger* v. *Commissioner*, both reported in 318 U. S. 604. In the *Griffiths* case the Supreme Court felt that it was precluded from reexamining *Eisner* v. *Macomber* by reason of the statutory provisions there involved relating to stock dividends. We have no comparable statutory provisions before us in this case, since this case does not involve stock dividends. Nevertheless, unless the Supreme Court indicates otherwise, we must accept *Eisner* v. *Macomber* as the law, or at least so much of it as has thus far survived.

[1] The issuance of the 1,000 shares of additional stock brought the total of issued stock to 3,500 shares. There do not appear to have been any further shares issued during the period here involved.

[2] In the Reids' case, he determined the amount of such income at $5,875, which he reduced by $1,000 representing the amount already reported in the 1948 return. In the Daggitts' case, he determined the amount of such income at $52,875, which he reduced by $9,000 representing the amount already reported in the 1947 return. If the Commissioner is correct in requiring the stock to be reported as income in 1948, it is puzzling as to why he allowed any offset to the Daggitts for the $9,000 reported for the previous year.

**34**

And in our opinion the instant cases present a situation that is so close to *Eisner* v. *Macomber* that we do not feel justified in refusing to follow it.[3] The additional compensation was voted to Reid so that, upon payment of the stock to him and Daggitt, their proportionate interests in the enterprise would not be disturbed. It is quite true that the amount allocated to Reid was a rounded figure so that the proportions were maintained only substantially but not precisely. However, to the extent that there was a variation we regard it as *de minimis* in the circumstances of this case. We hold that *Eisner* v. *Macomber* is controlling here.

In the Reid case, the Commissioner's determination that the receipt of the shares constituted additional income was the only adjustment that resulted in the determination of the deficiency. In the Daggitt case, however, there was another unrelated adjustment which is uncontested. Accordingly,

> *Decision will be entered under Rule 50 in Docket No. 38570;* and
> *Decision will be entered for the petitioners in Docket No. 38571.*

---

[3] This Court has reached a like result in at least two other cases, which were decided in Memorandum Opinions.