COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

FENDER SALES, INC., Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Donald D. and Jean RANDALL,
Respondents.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Esther FENDER, Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Jean E. RANDALL, Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Donald D. RANDALL, Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

E. Leo FENDER, Respondent.

Nos. 19074–19079.

United States Court of Appeals
Ninth Circuit.

Dec. 1, 1964.

Rehearing Denied in 19075–19079
Jan. 14, 1965.

Barnes, Circuit Judge, dissented in
part.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Lee A. Jackson, Melva M. Graney,
Arthur E. Strout, Dept. of Justice,
Washington, D. C., for petitioner.

William C. Jordan, Paul F. Loveridge,
Santa Ana, Cal., for respondents.

Before POPE and BARNES, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge.

These are petitions by the Commissioner of Internal Revenue for review of decisions of the Tax Court of the United States of which this Court has jurisdiction under Section 7482 of the Internal Revenue Code of 1954 (26 U.S.C. § 7482). The Tax Court held neither the corporate taxpayer, Fender Sales, Inc., nor the individual stockholder-taxpayers, Donald D. and Jean Randall, and C. Leo and Esther Fender, liable for a deficiency of income taxes on account of the transactions set forth in the following statement of the case, as made in petitioner's opening brief and concurred in by respondents.

The taxpayer Fender Sales, Inc. was incorporated in 1953 as a California corporation. It was authorized to issue 2,500 shares of common stock with a par value of $100 per share. At the commencement of the events material to this case, only 100 shares were outstanding, 50 of which were held by the taxpayer Donald D. Randall, and the other 50 by the taxpayer C. Leo Fender. Randall and Fender were also employees of Fender Sales and as such, were entitled to receive, as compensation for their services, $15,000 a year plus amounts equal to four per cent and one per cent, respectively, of annual sales.

Fender Sales was the exclusive sales agent for Fender Electric Instrument Co., Inc., a corporation owned entirely by C. Leo Fender.

Although Fender Sales has always been financially solvent, from its inception it has been plagued by a shortage of cash. This financial predicament was brought about primarily because it had to pay for its purchases upon receipt of the merchandise while it was often required to finance the dealers who purchased merchandise from it. Accordingly, in 1955, Fender Sales found it necessary to seek bank financing. Originally the bank did not ask for security for its loan, but later it required the subordination of other liabilities and personal guarantees from the corporate officers. In addition it became concerned about accrued (but unpaid) officers' salary liabilities that appeared on Fender Sales' balance sheet; it felt that these liabilities could represent potential priority claims over the bank's claim. To remedy this, the bank suggested that these liabilities be capitalized.

In each of its fiscal years ending May 31, 1954, 1955 and 1956, Fender Sales, which used the accrual method of accounting for federal income tax purposes, accrued $30,000 on its books of account as representing officers' salaries payable, but unpaid, in the amount of $15,000 a year each to Randall and Fender. In each of those years, Fender Sales deducted the $30,000 on its federal income tax return. Accordingly, as of August 6, 1956, Fender Sales owed Randall and Fender each $45,000 for salaries payable for the fiscal years ended May 31, 1954 through 1956.

On or about August 6, 1956, Randall and Fender, in order to comply with the bank's suggestion, offered to discharge Fender Sales' liability for salaries due and payable to them by accepting from Fender Sales an additional share of $100 par value common stock for each $100 of salary debt. On August 6, 1956, the board of directors of Fender Sales, consisting of Mr. and Mrs. Randall and Mr. and Mrs. Fender resolved to accept the offers by Randall and Fender. After obtaining a permit from the Commissioner of Corporations of the State of California, Fender Sales, on December 3, 1956, issued to Randall and to Fender 450 shares each of its $100 par value common stock in discharge and cancellation of its indebtedness of $45,000 owing to each of them. As a result of this issuance of stock, Sales' capital stock account was increased from $10,000 to $100,000 and its $90,000 liability for salaries owed to Randall and Fender was discharged and cancelled.

During the fiscal year ended May 31, 1957, Fender Sales accrued on its books of account $30,000 which represented officers' salaries payable, but unpaid, of $15,000 each to Randall and Fender.

Fender Sales deducted this amount of $30,000 on its federal income tax return for the fiscal year ended May 31, 1957.

On or about February 3, 1958, when Fender Sales was still indebted to Randall and Fender for $15,000 each for salary for the fiscal year ended May 31, 1957, Randall and Fender offered to discharge Fender Sales' liability for salaries due and payable to them by accepting from Fender Sales an additional share of $100 par value common stock for each $100 of salary debt. On February 3, 1958, the Board of Directors of Fender Sales resolved to accept the offers by Randall and Fender. On May 9, 1958, Fender Sales issued to Randall and Fender 150 shares each of its $100 par value common stock in discharge and cancellation of its indebtedness of $15,000 owing to each of these individuals. On the same date, it issued to Randall and Fender 350 shares each of its $100 par value common stock as a stock dividend. As a result, Fender Sales' capital stock account was increased from $100,000 to $200,000, its earned surplus account was decreased $70,000, and its $30,000 liability for salaries owed to Randall and Fender was discharged and cancelled.

On their federal income tax returns for the years 1956 and 1958, Fender and his wife did not report any amount as taxable income resulting from Fender's receipt of 450 shares of Fender Sales' stock on December 3, 1956, and 150 shares of Fender Sales' stock on May 9, 1958. On their federal income tax returns for the year 1956 and on their joint federal income tax returns for the year 1958, Randall and his wife did not report any amount as taxable income resulting from Randall's receipt of 450 shares of Fender Sales' stock on December 3, 1956, and 150 shares of Fender Sales' stock on May 9, 1958. On its corporate federal income tax returns for the fiscal years ended May 31, 1957 and May 31, 1958, Fender Sales did not report any amount as taxable income resulting from the discharge and cancellation on December 3, 1956 and May 9, 1958 of its indebtednesses for officers' salaries payable to Fender and Randall.

The Commissioner determined that the receipt of the stock constituted taxable salary income to Fender and Randall and, alternatively, that if it did not constitute taxable income to them, Fender Sales realized taxable income upon the cancellation of the salary indebtedness. The Tax Court held, however, that the cancellation of the indebtedness and issuance of the stock did not result in taxable income either to Fender and Randall or to Fender Sales. From that holding the Commissioner has sought review by this Court.

It is implicit in the foregoing fact statement and is conceded by respondents that the shares of Fender Sales, Inc. issued to each of the shareholders, Fender and Randall, had a fair market value of $100 per share (par value).

## TAX LIABILITY OF FENDER AND RANDALL

Cases numbered 19075 to 19079, inclusive, present petitions by the Commissioner to review decisions by the Tax Court that the individuals, Donald D. Randall and his wife, Jean Randall, and C. Leo Fender and his wife, Esther Fender, incurred no income tax liability arising from the transactions related in the statement of facts. The complete rationale of the Tax Court decision is found in the following quotation:

"Fender and Randall were the sole shareholders of Sales regardless of whether they each owned 50 shares or 1,000 shares. Their wealth was no more increased by the issuance of additional shares than if the corporation had caused its stock to be split 20 for 1. The issuance of such additional shares to Fender and Randall did not constitute income to them within the meaning of the 16th Amendment to the Constitution regardless of whether it represented a stock dividend or represented compensation for services. Eisner v. Macomber [252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521], supra. See also Deloss v. Daggitt, 23 T.C. 31 (1954)."

We disagree, and reverse the decision of the Tax Court in these cases.

The stockholder-employees received and accepted capital stock in discharge of the delinquent obligations of the corporation to them for salaries. If these were not equal stockholders to whom the corporation owed equal sums for unpaid salaries, there would be no semblance of a basis for dispute. The law and regulations plainly tax "all income from whatever source derived" (26 U.S.C. § 61), and provide: " * * * if a corporation transfers its own stock to an employee * * * as compensation for services, the fair market value of the stock at the time of transfer shall be included in the gross income of the employee." Regulations, § 1.61–2(d) (4). Here the parties agree the fair market value of the stock of Fender Sales, Inc. equalled its par value, and the additional stock issued is, in any event, presumptively equal in value to the liquidated obligations discharged. Regulations, § 1.61–2(d).

Respondents say this case is different because the taxpayers were stockholders as well as employees and the equal (50–50) stock ownership by Fender and Randall remained equal after the additional stock was issued; and that they, therefore, "received nothing which they did not already possess, i. e., the entire capital stock of Fender Sales, Inc."

But the corporation was a substantially different corporation after the transactions than before. After the transactions on August 6, 1956, for example, the net worth of the company (excluding capital stock as a liability) was increased by $90,000, resulting from the cancellation of the accrued salary indebtedness. The fact is clear that the interests of Fender and Randall in Fender Sales, Inc. were substantially enhanced in value and that they did, in effect, receive something of value constituting taxable income under the Sixteenth Amendment to the Constitution. In this context, Eisner v. Macomber (1920), 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, is not even apposite, let alone controlling. True, a stock dividend is just a piece of paper and, when issued proportionately to all stockholders, represents nothing of value and does not result in the realization of taxable income. But this is only because the basic net worth of the corporation, excluding capital stock as a liability, has not been changed. The stockholders have retained an equal interest in the same investment. In our situation, the stockholders have retained an equal interest in a substantially different investment. The Eisner opinion was explicit in pointing out that a stock dividend is "paper certificates that evidence an *antecedent* increase in the value of the stockholder's capital interest" (not, as here, a contemporaneous quid pro quo increase thereof), and "merely book-keeping that does not affect the aggregate assets of the corporation or its outstanding liabilities" (not, as here, a $90,000 reduction in debts of Fender Sales, Inc. in August, 1956). The obvious differences between the economic interests represented by an unsecured debt as compared with stock ownership need no elaboration.

We interpret Lidgerwood Manufacturing Co. v. Commissioner (2 CCA 1956), 229 F.2d 241, as supporting our conclusions. In Lidgerwood, the debts which were cancelled arose from loans, and, if paid would not have represented taxable income to the stockholder. In that case, a sole stockholder cancelled debts, receiving capital stock in exchange, to enable the corporation to obtain bank loans. The debts cancelled were uncollectible and the stockholder-taxpayer claimed bad debt deductions on its income tax returns. The Court rejected the taxpayer's contention that nothing had been received by virtue of the issuance of the additional stock and, denying the bad debt deduction, said:

"The petitioner contends that since the debts were assumed to be uncollectible, the cancellation of worthless debts and the issuance of stock therefor were meaningless formalities. We disagree. When a creditor cancels a debt in return for stock, he gives up the right to repayment, however prosperous the debtor may become,

and he acquires a right to dividends from future prosperity. If he owns less than all of the debtor's stock, the issuance of additional shares increases his share of possible dividends. If, as here, the creditor owns all the debtor's stock, his share is not increased but he has retained his 100 per cent right to future dividends, and, if the cancelled debts had any value whatever, to that extent he has increased his capital investment. It is not entirely clear what the Tax Court meant by its assumption that the debts were 'uncollectible.' Although the petitioner had contended that the subsidiaries were insolvent both before and after the cancellations, no finding of insolvency was made. But even on the assumption that the debtors were insolvent after as well as before the cancellations, wiping out the debts was a valuable contribution to the financial structure of the subsidiaries. It enabled them to obtain bank loans, to continue in business and subsequently to prosper."

Finally, Respondents say, in substance —break the transaction down to its component parts, none of them is a taxable event, therefore in the aggregate, they canot generate a tax liability. The argument is: First, the receipt by equal stockholders of equal additional shares of capital stock, without more, is nontaxable; second, the forgiveness by a stockholder of the corporation's debt to him is, without more, a contribution to the capital of the corporation which is expressly excluded from the corporation's gross income. Therefore, a combination of the two cannot impose income tax liability on anyone. The answer is that the argument is a complete non-sequitur. The first statement deals with the tax liability of the individual stockholders and the second with the tax liability of the corporation.

To be persuasive with respect to the tax liability of the individual stockholders, Respondents' contentions should be: First, the acquisition of additional stock in equal proportionate shares is not a taxable event; second, the cancellation of a debt which, if collected, would represent taxable income is not a taxable event; therefore, the two in combination cannot generate tax liability. This Court does not accept the second premise. We are not prepared to hold that the voluntary surrender or forgiveness by a taxpayer of a receivable which, if collected, would represent taxable income, is, in all circumstances, a non-taxable event. We believe the authorities are opposed to such a conclusion.

In Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the Supreme Court held that the income received on payment of coupons clipped from coupon bonds and given by a father to his son was taxable to the father, and said, in part:

"Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event rather than the acquisition of the right to receive it. And 'realization' is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him. Old Colony Trust Co. v. Commissioner, 279 U.S. 716 [49 S.Ct. 499, 73 L. Ed. 918]; Corliss v. Bowers, 281 U. S. 376, 378 [50 S.Ct. 336, 74 L.Ed. 916]. Cf. Burnet v. Wells, 289 U.S. 670 [53 S.Ct. 761, 77 L.Ed. 1439].

" * * *

"Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have re-

ceived himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. Cf. Burnet v. Wells, supra.

" * * *

"The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. See, Corliss v. Bower, supra [281 U.S. 378, 50 S.Ct. 336]; Burnet v. Guggenheim, 288 U.S. 280, 283 [53 S.Ct. 369, 370, 77 L.Ed. 748]. The tax laid by the 1934 Revenue Act upon income 'derived from * * * wages, or compensation for personal service, of whatever kind and in whatever form paid, * * *; also from interest * * *' therefore cannot fairly be interpreted as not applying to income derived from interest or compensation when he who is entitled to receive it makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received."

In Lidgerwood (supra), the case in which the taxpayer sought a bad debt deduction in addition to the capital stock received for the cancelled obligation, the Court succinctly said: "If the debtor has received a contribution to capital, the creditor must have made the contribution. Consistency requires that both parties treat it alike."

In Helvering v. Horst, the coupons were actually paid in the year of the gift, and Respondents point to this as a distinguishing feature, claiming the salaries due from Fender Sales, Inc. were never "paid". But, in Horst, the Supreme Court relied on the broader concept of "realization of income" rather than a restricted notion of actual payment for its conclusions, and we think it necessary and logical, in the just administration of the tax laws, that the Courts continue to recognize that a taxpayer may realize the income represented by an account receivable by exercising his rights of control and disposition of it for his economic benefit in ways other than receipt of payment in money. In Commissioner of Internal Revenue v. Lester, 1961, 366 U.S. 299, 304, 81 S.Ct. 1343, 1346, 6 L.Ed.2d 306, the Supreme Court approvingly quoted from Horst: "The power to dispose of income is the equivalent of ownership of it." We add, the exercise of the power to dispose of income is the equivalent of the realization of it. Fortunately, under the agreed facts of this case, we have no problem respecting the taxable value of the income thus realized and no problem respecting the tax year in which the income is reportable.

Randall and Fender, when they voluntarily elected to exercise their dominion and control over the choses in action against Fender Sales, Inc. for unpaid salaries by extinguishing them for the benefit of the corporation, of which they were sole owners, thereby augmenting the intrinsic worth of the capital stock they held, more surely "realized" for their own benefit the value of the obligations discharged than did Horst in his gift of interest coupons to his son.

In summary, we hold that the discharge by a corporation of its salary obligations to any employee (stockholder or not) by the issuance of the corporation's capital stock to the employee is a payment and realization of income by the employee in the amount of the fair market value of the stock. The transaction is controlled by Section 61 of the Internal Revenue Code and Section 1.61–2 of the Regulations. We disagree with the conclusions in Josephson v. Commission, 6 T.C.M. 788 and Daggit v. Commissioner, 23 T.C. 31, cited by Respondents.

The decisions of the Tax Court in cases numbered 19075 to 19079, inclusive, are reversed.

## TAX LIABILITY OF FENDER SALES, INC.

Case No. 19074 presents a petition to review the determination by the Tax Court that the corporation, Fender Sales, Inc., incurred no income tax liability by reason of the related transactions.

■ Although the Commissioner argued for assessing tax liability against the corporation, this was only as an alternative should the individuals be held not liable. The Commissioner's brief states: "For the reasons already shown, we believe that Fender and Randall are taxable on the amounts of the accrued salaries and that Fender Sales is not. We do not contend that both are taxable on the same amounts." Whether viewed as payments for stock of the corporation or as the forgiveness by the shareholders of debts owed to them by the corporation, the transactions were nontaxable payments or contributions to capital from the point of view of the corporation's tax liability. 26 U.S.C. § 118; I.R.C. 1032 (a); Reg. 1.1032–1; Reg. 1.61–12(a); Carroll-McCreary Co., Inc. v. Commissioner (2 CCA 1941), 124 F.2d 303; Helvering v. American Dental Co., 1943, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785; Commissioner of Internal Revenue v. Auto Strop Safety Razor Co. (2 CCA 1934), 74 F.2d 226, 227.

The petition in Case No. 19074 should be dismissed.

BARNES, Circuit Judge (dissenting in part and concurring in part).

I respectfully dissent. I would affirm the Tax Court in respect to the nonliability of the individual taxpayers, i. e., cases 19075 to 19079, inclusive.

I deduce the matter that concerns my brothers is the loophole in present laws which allows a corporation whose stock is owned equally by two principals to take deductions in certain years for accrued salaries payable, never incur actual expenses for such deductions, and then have the liabilities written off without any tax recognition because the item is treated as a capital contribution by the shareholders. If on a balancing of all factors, this method of corporate tax liability reduction is a loophole that should be plugged, then it should be done by legislative action, not by judicial fiat. The majority opinion seeks to remedy the supposed leak by attaching liability to the *individuals* involved by extending the dominion and control cases, represented by Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

This majority opinion is the first I have encountered which recognizes a realization of income by shareholders upon an increase in corporate net worth, *where no dividend has been declared or capital gain yet realized* by the shareholders. Shareholders' interests in corporations change every day. The net worth of corporations is in a constant state of flux. Surely, when it increases, the shareholders are not *yet* deemed to have made a taxable gain. Rather the increase in corporate net worth is merely a paper increase of the shareholders' equity, not taxable until such time as the shareholders realize the increase by virtue of a dividend, or the sale or exchange of the security investment above cost. Then, and only then, have the courts traditionally recognized "a taxable event."

The use of the Horst line of cases as authority for recognizing the creation of a taxable event for the individuals in the case at bar is to me misleading. The evasionary device attacked in Horst and its progeny was different from the present situation. Those cases involved assignments of income rights to others prior to the point of realization of the income by the taxpayer himself. Such an anticipatory device by a taxpayer with complete control over the income was clearly a loophole in our tax laws that required plugging. Otherwise a taxpayer could assign his earnings directly to his creditors or family and claim there was never any income realization on his part. The case at bar does not involve a flagrant example of this potential loophole. The taxpayers here have had no benefits *realized* by the issuance of additional stock for the cancellation of a cor-

porate debt; their income has not been *diverted* to anyone else for their own personal benefit. They did not exert any power to dispose of their alleged "income" in a manner equivalent to ownership, and will not do so until the ordinary taxable event occurs—the sale of their stock.

The Lidgerwood case, cited, is in my opinion not controlling on the facts of this case. In fact the opinion seems to overlook the corporate nature of the stockholder in that case. The bad debt deduction was disallowed the parent-stockholder, but the cancellation was treated not as income to the parent *or its creditor subsidiaries;* rather it was properly treated as a capital contribution. To the extent the Lidgerwood case is relevant to the facts before us, it supports the conclusion that the taxpayers have not yet realized income by the receipt of additional shares of stock (while maintaining their identical proportional interests) for a debt cancellation.

> "This court and others have held that cancellation of a debt owed by a corporate debtor to a stockholder of the debtor does not constitute taxable income to the debtor but is a capital contribution by the creditor. For many years the Treasury Regulations have so provided. * * * If the debtor has received a contribution to capital, the creditor must have made the contribution. Consistency requires that both parties treat it alike. *Whether the creditor's investment will result in profit or loss to the investor cannot be determined forthwith. Loss, if any is eventually realized, occurs when the investment is closed out; that is, when the shares of stock of the debtor are sold or become worthless."* (Emphasis supplied.) Lidgerwood Mfg. Co. v. Commissioner, 229 F.2d 241, at 242–43 (2d Cir. 1956).

Another approach to the problem, which to me supports the decision of the Tax Court, is as follows:

The two equal owners of the corporation are cash basis taxpayers. They each work on behalf of the corporation for three years without drawing a salary. Thus each has no current employment income subject to tax. However, the full time services each renders to the corporation are of some value; and are here valued at $15,000 per year. These services have their effect on the corporate performance. Consequently, these gratuitous services result, at the end of three years, in a corporate net worth presumably $90,000 greater than it would have been without their services. If at any time one or both of the individual owners decides to sell his investment, he will be taxed in effect for his gratuitous services because the proceeds from any sale would presumably be $45,000 greater than they would have been had he not contributed his services. He has not taken advantage of any tax loophole that does not already exist. Rather, he has just chosen not to take a current salary which would be taxed at ordinary income rates, and has instead increased the value of his investment to be taxed at a subsequent time at capital gain rates. I contend that, from the individual's standpoint, this is exactly what has occurred in the case at bar.

As to the corporation tax liability (case No. 19074), I would affirm.

Under the Internal Revenue Code and regulations, the corporation did not realize income on account of its issuance of capital stock to Fender and Randall, and did not realize income on account of the cancellation of the salary indebtedness to Fender and Randall. From the point of view of the corporation, any consideration received by it upon an original issue of its corporate stock, whether more or less than the actual or the stated value thereof, is a receipt of capital, not income. Merten's "Law of Federal Income Taxation," Vol. 7, p. 67.; I.R.C. 1032(a); Reg. 1.1032–1.

Also, should we treat the capital stock issued as valueless and view the transactions as the gratuitous forgiveness of the salary obligations of the corporation by the respective stockholder-employees, still the corporation would not thereby have realized taxable income. It is established

both by regulation and court decision that the gratuitous forgiveness by a shareholder of a debt owed to him by the corporation represents a contribution to the capital of the corporation and is not taxable income. Regulation 1.61–12 (a); Carroll-McCreary Co. v. Commissioner, 124 F.2d 303 (2d Cir. 1941). Under the Internal Revenue Code, a contribution to the capital of a corporate taxpayer is expressly excluded from the definition of reportable gross income. 26 U.S.C. § 118. In this case, the corporate obligations which were cancelled were unpaid salary obligations to the shareholders which had been deducted as operating expenses by the corporate taxpayer in its annual accrual-accounting income tax returns and which, if paid, would have represented taxable income to the shareholder-employees. In dealing with a corporation's possible tax liability arising from the gratuitous forgiveness of a debt by a shareholder, the law makes no distinction on the basis of how the obligation arose, that is, whether or not it arose out of a transaction which had permitted the corporation, in an earlier tax year, to deduct the charge from reportable gross income, or whether or not the obligation, if paid, would have constituted reportable income to the shareholder-taxpayer. The forgiveness of the debt by the shareholder is, in either case, from the viewpoint of the corporate taxpayer, a contribution to capital, and not a taxable event. In Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785 (1943), the Supreme Court held the forgiveness of interest on notes and of rentals due by nonstockholder creditors to be gifts and capital contributions to a corporation, though "the motives leading to the cancellation were those of business or even selfish." Also, in Commissioner v. Auto Strop Safety Razor Co., 74 F.2d 226 (2d Cir. 1934), the court, under regulations like those now prevailing, held the voluntary cancellation by the sole stockholder of a subsidiary corporation of over two millian dollars in debts, a portion of which represented expense items previ-

ously deducted, such as royalties and interest, to be a nontaxable contribution to the capital of the subsidiary corporation, and said: "When the indebtedness was canceled, whether or not it was a contribution to the capital of the debtor depends upon considerations entirely foreign to the question of the payment of income taxes in some previous year."

I believe a word or two of further explanation is required. The amounts now being treated as contributions to capital have previously been deducted by the corporation on its accrual-method tax returns. Had the individual taxpayers merely loaned money to the corporation and now cancelled the indebtedness, the cancellation would clearly be a contribution to capital, and such contribution should not be treated as taxable income to the corporation. However, the case at bar involves an indebtedness in the nature of accrued salaries which, unlike the hypothetical taxpayer loans, have once been deducted from income in prior years, consequently lessening the corporation's tax liability. Where sums have been deducted as expenses in previous years under an accrual method of accounting, and are now forgiven and are no longer corporate liabilities, the corporation ordinarily must add back the amount of the cancellation to its current income. If it need not, a flagrant loophole is created whereby expense deductions are taken without expenses ever being incurred or paid out. I refer to the language in Helvering v. Jane Holding Corp., 109 F.2d 933 (8th Cir. 1940).

"The above cases recognize the principle that an obligation, once deducted but not paid, represents income when, because of subsequent circumstances, it is cancelled or it may be determined with reasonable certainty that it will never be enforced. None of the cases attach any importance to the means by which the cancellation is effected. That is immaterial, the controlling factors being the previous deductions offsetting income otherwise

taxable and the subsequent release of the indebtedness before payment.

"The Trust filed all of its returns for prior years on the cash basis and never reported as taxable income the interest accrued and deducted by the Corporation. The Trust, through the trustees, has, at all times since its creation, been in a position to determine and dictate the policies of the Corporation. It has chosen to earmark the payments which it received from the Corporation as payments on account of principal and at the same time, throughout the entire period, these payments have been in effect deducted as interest accrued in the Corporation's returns. To now permit this accrued liability, after the forgiveness thereof, to be called surplus and addition to capital without taxing the income actually received by the Corporation would result in an unjustifiable avoidance of tax."

While I agree with Judge Thompson's ultimate conclusion that the company has not realized income by the cancellation of the accrued salaries obligation, I do believe to properly justify that conclusion requires some discussion of the conflicting line of cases dealing with shareholder cancellations of indebtedness where the indebtedness has previously been deducted by the corporation as an operating expense.

Regulation § 1.61–12(a) addresses itself directly to the problem of the cancellation of an indebtedness by a shareholder of a corporation. *Generally*, it maintains that the gratuitous forgiveness of a debt constitutes a contribution to capital, the corporation thus realizing no income. The leading precedent for this line of reasoning is Helvering v. American Dental Co., supra. In that case, the Commissioner had increased the taxpayer's reported income by the sum of the items of the cancelled indebtedness which had served to offset income in like amounts in prior years. But the Supreme Court held that the gratuitous

cancellation of rent and interest due should be deemed a gift and not income.

The leading precedent for the opposing point of view, recognizing income to the taxpayer relieved of an indebtedness, is the later case of Commissioner v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949), which taxed the difference between the face amount of the taxpayer's personal indebtedness as the maker of secured bonds issued at face value, and a lesser amount paid by him for their repurchase. There was no evidence that there had been a transfer of something for nothing: the seller received the maximum price attainable.

Neither of these cases serves as exact precedent for the situation we have here; the cancellation of accrued salaries which have been deducted by the debtor-corporation in prior years. The leading exponents of the conflicting points of view in the accrued salary cases are Helvering v. Jane Holding Corp., supra, in favor of income recognition, and Carroll-McCreary Co. v. Commissioner, 124 F.2d 303 (2d Cir. 1941), holding no realization of income from the gratuitous cancellation of debts for unpaid salaries owing to officer-shareholders. The Jane case preceded the decision in American Dental Co., supra, and the trend of the case law since the latter decision has been to follow Carroll-McCreary and hold no income is recognized if there was no consideration given as inducement for the cancellation. The cases have interpreted "gratuitous" forgiveness of a debt as simply meaning that no consideration was paid by the corporation for release of the debt. The prior deduction of the debt as a corporate expense has been held immaterial to the question of whether a nontaxable capital contribution was effected by the debt release. See, *e. g.*, In re Triple Z Products, Inc., 27 AFTR 1164; Pondfield Realty Co., 1 T.C. 217, as reversed without written opinion under the rule in American Dental Co. (2d Cir., September 15, 1943), reported at ¶ 61, 103 P-H 1943 Fed.

In the absence of evidence of consideration passing from Fender Sales, Inc.,

to the individual shareholders for cancellation of the accrued salaries indebtedness, the above case law supports the conclusion that the corporation did not realize income by the release of the accrued salaries liability, though the corporation had already taken the amount as deduction for expense of doing business.

Any potential loophole that is created by attaching no tax liability to the individuals or the corporation is a product of the legislature's failure to compel the corporation to make an income recognition when their accrued deductions are cancelled. This is an error which the legislature should be called upon to reconsider. It should not be corrected by committing a second error in the present case to offset the first.