**Robert F. DWYER and Aileen K. Dwyer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 75–108.

United States District Court, D. Oregon.

Aug. 3, 1977.

William H. Kinsey, Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Craig J. Casey, Asst. U. S. Atty., Portland, Or., Robert G. Burt, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

BELLONI, Judge:

This is a tax refund action which was tried to the court through briefs and a stipulated set of exhibits. Robert F. Dwyer ("Dwyer" or "plaintiff") and his wife, Aileen K. Dwyer,[1] contest an income tax assessment arising out of a forgiven debt owed Dwyer by his half-owned close corporation. Jurisdiction is conferred by 28 U.S.C. § 1346(a)(1).

## BACKGROUND

In March of 1966, Dwyer and his son, Robert Dwyer, Jr., formed the Delaware corporation, Dwyer Steamship Co., Inc. ("Dwyer Steamship" or "the corporation"). The senior and junior Dwyers were the only shareholders during the corporation's entire existence—each received 5,000 shares of common stock at a cost of $10.00 per share at the time of formation.

In June of 1966, the corporation purchased a Victory-type steamship, the S. S. CHOCTOW VICTORY, from Saxis Steamship Co. ("Saxis") for $650,000.00.

A few days after the purchase of the CHOCTOW VICTORY, the corporation formed a joint venture with two other corporations which also owned Victory-type steamships, Saxis and Standard Steamship Co. ("Standard"). The three corporations each contributed $100,000.00 to the venture for the operation of the three vessels, and agreed to share all costs, expenses, profits and losses equally. The companies also entered into an agreement with an overseer, Columbia Steamship Co. ("Columbia").[2] Under this agreement, Columbia was granted exclusive management of the three vessels.

Because the initial business ventures of Dwyer Steamship required more capital than was available from stock issuance, plaintiff began making loans to the corporation. In return, he took 5 percent debentures due 5 years from date of issuance. Between July 1966 and April 1968, Dwyer loaned $400,000.00 5 percent money to the corporation. He additionally advanced sums of money to the corporation on an open account.

The corporation, an accrual taxpayer, recorded the interest accruing on Dwyer's loans as follows:

---

1. Mrs. Dwyer is a party to this action solely because she joined with her husband in the filing of a joint income tax return for the year in question.

2. Columbia, in reality, was owned by Dwyer Steamship, Saxis Steamship and Standard Steamship.

| DATE | AMOUNT |
|------|--------|
| 12/31/'66 | $ 5,000.00 |
| 12/31/'67 | $16,041.66 |
| 12/31/'68 | $17,833.37 |

TOTAL: $38,875.03

Just 2¾ years after its formation, Dwyer Steamship folded its tents, without ever having made a payment to Dwyer on the accrued interest set out above.[3] On December 30, 1968, Dwyer Steamship sold its assets to Saxis and Standard for $700,000.00. The following also occurred on that date:

1) The corporation liquidated its outstanding debentures due plaintiff ($400,000.00);

2) The corporation liquidated its outstanding open account in debentures due plaintiff ($170,000.00);

3) The corporation retired its common stock in complete liquidation ($65,000.00 to each of the Dwyers);

4) Plaintiff *"forgave" the $38,875.03 debenture interest owed him by Dwyer Steamship* in a document entitled "Forgiveness of Indebtedness";

and

5) The corporation recorded the "forgiveness" of interest as a reversal of its accrued expense and liability account in the amount of the forgiveness, $38,875.03.

As seen from the above, of the $700,000.00 received from Saxis and Standard, plaintiff treated $570,000.00 as a return on his loans and advances. The remaining $130,000.00 was treated as a return on the stock. The interest was ignored.

The IRS disagreed. After an audit, the Commissioner determined that Dwyer "forgave" the interest primarily to convert ordinary income (interest) into long-term capital gain (increased liquidation distribution), and "recharacterized" the sale proceeds as follows:

1) Liquidation of plaintiff's loans and advances—$570,000.00;

2) Payment of accrued interest to plaintiff—$38,875.03;

3) The remaining $91,124.97 distributed equally between Dwyer and his son—$45,562.48 each (resulting in long-term capital losses).

Plaintiff paid the additional income tax assessment[4] in April of 1973, and timely filed a refund claim. This action followed the Commissioner's denial of Dwyer's claim for refund.

## TAX LIABILITY

The issue in this case is whether the forgiveness of interest resulted in Dwyer's realization of ordinary income.

Dwyer contends that since he waived all rights to the interest payments, he received no interest income. Alternatively, he contends that any interest paid him by Dwyer Steamship in liquidation could not exceed $15,000.00, the amount by which the corporation's liquidation payments exceeded his investment.

The government contends that the $700,000.00 included payment of Dwyer's accrued interest, $38,875.03, which he constructively received.

Plaintiff relies on a recent Tax Court opinion, *Putoma Corp. v. Commissioner,* 66 T.C. 652 (1976). In *Putoma,* two of Putoma Corporation's and Pro-Mac Company's officers and directors, Hunt and Purselley,[5] "forgave" the corporation for accrued salary. Hunt also "forgave" accrued interest owed him.[6] The Tax Court was unpersuad-

---

3. Dwyer Steamship deducted these amounts as interest expenses in its 1966, 1967 and 1968 income tax returns. These deductions were later disallowed due to the corporation's failure to actually pay the interest within 2½ months following the taxable year in which the deduction was claimed. 26 U.S.C. § 267(a)(2).

4. Plaintiff, a 70% taxpayer in 1968, was assessed an additional $21,940.10 in taxes, and $5,246.09 in interest.

5. Putoma and Pro-Mac were related corporations which made complex structural aircraft parts for F–111 airplanes.

6. The two corporations were indebted to Hunt for interest because he bought machinery and

ed by the Commissioner's argument that either the corporation or the officers realized income when accrued salary and interest obligations were cancelled. The court noted, in reaching its decision, that: a) Business reasons mandated the cancellation; and b) since payment was conditional, no assignment of a receivable took place.[7]

The Commissioner appears to rely on two theories here: a) Income was realized because a receivable was assigned; and b) he has the right to ignore the "forgiveness of interest" because it was a means devised to avoid paying income taxes.[8]

■ The problems with the Commissioner's theories are that one is not supported by the law, and the other is not logical. First is tax avoidance. The Commissioner seems to contend that a transaction, if entered into with a primary purpose of tax avoidance, should be taxed at the maximum. This, of course, is not the law. Tax avoidance is anything but a sin—it is as American as apple pie. Whether or not Dwyer sought to avoid paying more income tax I find to be singularly irrelevant here. The Commissioner is not all powerful, and should not be allowed to "recharacterize" business transactions merely because he may receive less tax than a less astute taxpayer would pay.

■ This is not to suggest that the Commissioner may not "recharacterize" sale proceeds. He may if his position is supportable. Here, it is at least incumbent upon the IRS to challenge the assigned stock valuation and support its lower valuation. In other words, the Commissioner must be able to point to something concrete which plaintiff received to prevail in his recharacterization. *See Commissioner v. Fender Sales, Inc.,* 338 F.2d 924 (9th Cir. 1964). The Dwyers invested $670,000.00 in Dwyer Steamship,[9] and liquidated for $700,000.00. They attributed the $30,000.00 of profit to increased stock valuation. The Commissioner in no way counters this stock valuation, but still contends that Dwyer constructively received the interest. The two are incompatible, and if the stock was worth $130,000.00 at the time of liquidation, no interest income could possibly have been received by Dwyer.

The Commissioner's second theory, assignment of income, seeks to stretch the *Helvering v. Horst* [10] rule *far* beyond its breaking point. With incantations of "substance over form," the Commissioner urges the court to see the "economic realities" involved. He argues, in a very unspecific fashion, that plaintiff "made money" by forgiving the interest obligation because: a) Dwyer received an increased liquidation distribution; b) Dwyer "made" approximately $3,000.00 in after-tax dollars; and 3) the waiver accomplished a gift of one-half of the forgiven interest to Robert, Jr.[11]

The above arguments beg the question[s]. *What income* was realized? Was ". . . the cancellation . . . the exercise of a power to dispose of income equivalent to realization"? *Putoma,* 66 T.C. at 670. The Commissioner has not persuaded me that

---

sold it to the companies for his purchase price. He then took interest-bearing notes instead of cash from Putoma and Pro-Mac.

7. The business reasons which mandated the forgiveness mainly stemmed from the drastic government cutback in F–111's. The salaries were conditional because the corporations did *not* have to pay them unless it had enough reserve. The Tax Court found the interest sufficiently tied to salary to also be conditional.

8. For instance, in his reply brief, the Commissioner argues:
"That the plaintiff chose instead to forgive Dwyer Steamship's debt (taxable at ordinary income rates) and, by so doing, increase his and his son's liquidation distributions (taxa-

ble at capital gains rates), was simply a means devised to avoid taxes for which he should now be held accountable."

9. This total is arrived at as follows:

| Initial Stock purchase— | |
|---|---|
| $50,000.00 each: | $100,000.00 |
| Plaintiff's loans: | 400,000.00 |
| Plaintiff's open account advances: | 170,000.00 |

10. 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

11. In fact, the Commissioner states in his brief that this latter theory may give rise to a gift tax assessment against Dwyer.

anything which he has generally described as being assigned was additional income. Therefore, there was no realization because the Commissioner has not successfully challenged plaintiff's stock valuation or pointed to other specific benefits derived from the forgiveness. Thus, no assignment could have taken place.

I conclude that *Putoma* is not distinguishable, is well-reasoned, and controls this case. Plaintiff prevails.

Plaintiff is directed to submit a form of judgment in conformity with this opinion.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.